United States District Court
District of Columbia

# AFFIDAVIT OF SPECIAL AGENT WILLIAM BROWN IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

Your affiant, William Brown, a Special Agent with the Drug Enforcement Administration, being duly sworn, hereby depose and state as follows:

## A. Introduction and Agent Background

1. I make this affidavit in support of an application for a search warrant for a certain account controlled by the free web-based electronic mail service provider known as MSN Hotmail headquartered at 1065 La Avenida, Building 4, Mountain View, California 94043. The account to be searched is VJHERRERA@HOTMAIL.COM, which are further described in the following paragraphs and in Attachment A. As set forth herein, there is probable cause to believe that on the computer systems of MSN Hotmail, there exists evidence of the whereabouts of a person to be arrested for violations of Title 21 United States Code, Sections 959(a) (Manufacture or distribution for purpose of unlawful importation) and Section 963 (Attempt and Conspiracy).

2. I am a Special Agent of the Drug Enforcement Administration (DEA) assigned to the Bilateral Case Group, Special Operations Division. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516(1). I have been a DEA Special Agent for over eight years.

1

3. Prior to my employment with DEA, your Affiant was employed as Police Officer with the Cape Coral Police Department in Florida for five (5) years, of which three and a half (3½) years were spent as a narcotics detective assigned to the Vice Intelligence Narcotics Unit. While employed by the Cape Coral Police Department, your affiant personally conducted and assisted in numerous investigations involving the distribution of controlled substances. These investigations have resulted in the issuance of numerous arrest warrants and search warrants.

4. Upon transferring to the DEA, your Affiant underwent an intensive sixteen-week basic agent training program, which included training in drug investigation techniques, drug identification, search and seizure laws, asset forfeiture laws, and arrest techniques. During the past eight (8) years that your Affiant has been employed as a Special Agent with the DEA, your Affiant has personally conducted and assisted in numerous investigations involving the distribution of controlled substances. These investigations have resulted in the issuance of numerous arrest warrants, search warrants, the indictment and conviction of individuals for state and federal violations.

5. I am familiar with the operations of illegal international drug trafficking organizations in various parts of the world, including South America and Mexico.

6. I am familiar with the ways in which narcotic traffickers conduct their business, including methods of importing and distributing narcotics, money laundering, the use of satellite phones, cellular telephones and the internet to facilitate their illegal acts, and the use of numerical codes and code words to conduct drug transactions. My training and experience as a Special Agent of the DEA, my conversations with other Special Agents of the DEA, foreign law enforcement, state and local investigators familiar with narcotics trafficking and money laundering matters, form the basis

2

of the opinions and conclusions set forth below, which I drew from the facts set forth herein.

7.     In my training and experience, I have learned that Hotmail is a company that provides free web based Internet electronic mail ("e-mail") access to the general public, and that stored electronic communications, including opened and unopened e-mail for Hotmail subscribers may be located on the computers of Hotmail. Further, I am aware that computers located at Hotmail contain information and other stored electronic communications belonging to unrelated third parties. Accordingly, this affidavit and application for search warrant seek authorization solely to search the computer accounts and/or files and following the procedures described herein and in Attachment A.

## B. Background Regarding Computers, the Internet, and E-mail

8. The term "computer" as used herein is defined in 18 U.S.C. 1030(e)(1), and includes an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

9. Based on my training, experience and knowledge, I know the following:

a. The Internet is a worldwide network of computer systems operated by governmental entities, corporations, and universities. In order to access the Internet, and individual computer user must subscribe to an access provider, which operates a host computer system with direct access to the Internet. The World Wide Web ("www") is a functionality of the Internet, which allows users of the Internet to share information;

b. With a computer connected to the Internet, an individual computer user can make

3

electronic contact with millions of computers around the world. This connection can be made by any means, including modem, local area network, wireless and numerous other methods; and

c. E-mail is a popular form of transmitting messages and/or files in an electronic environment between computer users. When an individual computer user sends e-mail, it is initiated at the user's computer, transmitted to the subscriber's mail server, then transmitted to its final destination. A server is a computer that is attached to a dedicated network and serves many users. An e-mail server may allow users to post and read messages and to communicate via electronic means.

### C. MSN Hotmail

10. Based on my training and experience, I have learned the following about Hotmail :

a. Hotmail is an e-mail service which is available free of charge to Internet users. Subscribers obtain an account by registering on the Internet with MSN Hotmail. MSN Hotmail requests subscribers to provide basic information, such as name, gender, zip code and other personal/biographical information. However, MSN Hotmail does not verify the information provided;

b. MSN Hotmail maintains electronic records pertaining to the individuals and companies for which they maintain subscriber accounts. These records include account access information, e-mail transaction information, and account application information;

c. Subscribers to MSN Hotmail may access their accounts on servers maintained and/or owned by Hotmail from any computer connected to the Internet located anywhere in the world;

4

    d. Any e-mail that is sent to an MSN Hotmail subscriber is stored in the subscriber's "mailbox" on MSN Hotmail's servers until the subscriber deletes the e-mail or the subscriber's mailbox exceeds the storage limits preset by MSN Hotmail. If the message is not deleted by the subscriber, the account is below the maximum limit, and the subscriber accesses the account periodically, that message can remain on MSN Hotmail's servers indefinitely;

    e. When the subscriber sends an e-mail, it is initiated at the user's computer, transferred via the Internet to MSN Hotmail's servers, and then transmitted to its end destination. MSN Hotmail users have the option of saving a copy of the e-mail sent. Unless the sender of the e-mail specifically deletes the e-mail from the MSN Hotmail server, the e-mail can remain on the system indefinitely. The sender can delete the stored e-mail message thereby eliminating it from the e-mail box maintained at MSN Hotmail, but that message will remain in the recipient's e-mail box unless the recipient deletes it as well or unless the recipient's account is subject to account size limitations;

    f. An MSN Hotmail subscriber can store files, including e-mails and image files, on servers maintained and/or owned by MSN Hotmail; and

    g. E-mails and image files stored on a MSN Hotmail server by a subscriber may not necessarily be located in the subscriber's home computer. The subscriber may store e-mails and/or other files on the MSN Hotmail server for which there is insufficient storage space in the subscriber's computer and/or which he/she does not wish to maintain in the computer in his/her residence. A search of the files in the computer in the subscriber's residence will not necessarily uncover the files that the subscriber has stored on the MSN Hotmail server.

**D. Stored Wire and Electronic Communication Access**

11. Title 18, United States Code, Chapter 121, Sections 2701 through 2711, is entitled "Stored Wire and Electronic Communications and Transactional Records Access."

a) Title 18, United States Code, Section 2703(a), provides:

> A governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication, that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation or equivalent State warrant. A governmental entity may require the disclosure by a provider of electronic communications services of the contents of a wire or electronic communication that has been in electronic storage in an electronic communications system for more than one hundred and eighty days by the means available under subsection (b) of this section.

b) Title 18, United States Code, Section 2703(b), provides, in part:

> (1) A government entity may require a provider of remote computing service to disclose the contents of any electronic communication to which this paragraph is made applicable by paragraph (2) of this subsection-
> (A) without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation. . .
> (2) Paragraph (1) is applicable with respect to any electronic communication that is held or maintained on that service -
> (A) On behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such remote computing service; and
> (B) Solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing.

c) The government may also obtain records and other information pertaining to a subscriber to or customer of electronic communication service or remote computing service by way of a search warrant. 18 U.S.C. 2703(c)(1)(A). No notice to the subscriber or customer is required. 18 U.S.C. 2703(c)(3).

d) Title 18, United States Code, Section 2711, provides, in part:

As used in this chapter -
(1) The terms defined in section 2510 of this title have, respectively, the definitions given such terms in that section; and
(2) The term "remote computing service" means the provision to the public of computer storage or processing services by means of an electronic communications system.

e) Title 18, United States Code, Section 2510, provides, in part:

(8) "contents" when used in respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication...
(14) "electronic communications system" means any wire, radio, electromagnetic, photo optical or photo electronic facilities for the transmission of electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications;
(15) "electronic communications service" means any service which provides the users thereof the ability to send or receive wire or electronic communications;...
(17) "electronic storage" means -
   (A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and
   (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication.

## E. Search Procedure

12. In order to ensure that Agents search only those computer accounts and or files

7

described in Attachment A, this affidavit and application for search warrant seeks authorization to permit employees of MSN Hotmail to assist agents in the execution of this warrant. To further ensure that Agents executing this warrant search only those computer accounts and/or files described in Attachment A, the following procedures will be implemented:

 a. The search warrant will be presented to MSN Hotmail personnel who will be directed to isolate those accounts and files described in Attachment A;

 b. In order to minimize any disruption of computer service to innocent third parties, MSN Hotmail employees (with or without law enforcement personnel) trained in the operation of computers will create an exact duplicate of the computer accounts and files described in Attachment A, including an exact duplicate of all information stored in the computer accounts and files described in Attachment A;[1]

 c. MSN Hotmail employees will provide the exact duplicate in electronic form of the accounts and files described in Attachment A and all information stored in those accounts and files to the agent who serves this search warrant;

 d. Law enforcement personnel will thereafter review the information stored in the accounts and files received from MSN Hotmail employees and then identify and copy the

---

[1] The absence of a law enforcement officer at the time of the actual search in the context of computer files located with an Internet Service Provider has been deemed constitutional.

information contained in those accounts and files which are authorized to be further copied by this search warrant; and

  e. Law enforcement personnel will then seal the original duplicate of the accounts and files received from MSN Hotmail employees and will not further review the original duplicate absent an order of the Court.

## F. Basis for Facts Contained in this Affidavit

13. Except where otherwise noted, the information set forth in this affidavit has been provided to me directly or indirectly by Special Agents of the DEA or other law enforcement officers. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom I have spoken or whose report I have read and reviewed. Such statements are among many statements made by others and are stated in substance, unless otherwise indicated. Similarly, information resulting from surveillance, except where indicated, does not set forth my personal observations but rather has been provided directly or indirectly by other law enforcement officers who conducted such surveillance.

14. I have not set forth each and every fact learned during the course of this investigation. Rather, I have set forth only the facts that I believe are necessary to establish probable cause for the issuance of a search and seizure warrant based on the instant affidavit.

---

United States v. Bach, 310 F.3d 1063 (8th Cir. 2002), *cert. denied* 123 S. Ct. 1873 (2003).

### G. Probable Cause

15. On October 30, 2003, Otto Herrera-Garcia, his brother Guillermo Herrera-Garcia and associate Byron Linares were indicted by a Federal Grand Jury in the District of Columbia, for violation of 21 USC 959 (distribution and possession with intent to distribute a controlled substance knowing said substance would be unlawfully imported into the United States), and 963 (conspiracy to do the same). Warrants were subsequently issued for their arrest.

16. On April 21, 2004, Otto Roberto HERRERA-Garcia was arrested in Mexico City, Mexico pursuant to joint efforts by agents of DEA's Mexico City Country Office, DEA's Guadalajara Resident Office and Mexican counterparts from the Agencia Federal de investigaciones (AFI) and the Procuraduria General de la Republica. Office of Mexico's Attorney General (PGR). Subsequently on May 13, 2005 Federal fugitive Otto HERRERA-Garcia escaped from the Reclusorio Sur prison in Edo, Mexico, where he was awaiting extradition to the United States.

17. On May 26, 2005, Special Agent Tom Bartusiak, stationed in the Drug Enforcement Administration Guadalajara, Mexico Resident Office debriefed a confidential source who advised that he/she was incarcerated with Otto HERRERA in the Reclusorio Sur prison. The CS stated that one of his/her fellow inmates was a man by the name of Eduardo SALAZAR-Carrillo. SALAZAR-Carrillo possessed a Palm Pilot with wireless internet access, which he allowed other inmates in the prison to use to send e-mail messages outside of the jail. The CS stated that HERRERA was one of the inmates who sent and received messages.

18. You affiant knows that Otto Herrera is married to a woman by the name of Shari

HERRERA. On June 8, 2005, Shari HERRERA was arrested in Boise, Idaho pursuant to a material witness warrant that was issued on June 3, 2005, in the District Court for the District of Colombia. Subsequent to her arrest, Shari HERRERA was interviewed by DEA special agents, to include your affiant. HERRERA confirmed that that she was still married to Otto HERRERA and that she had been corresponding to her husband via the internet. Shari HERRERA stated that she received e-mail from her husband at the email account "vjherrera@hotmail.com," and that when she emailed him, it was to email address "canchelinda15@yahoo.com". Shari HERRERA stated that she was in contact with her husband while he was in prison and after he escaped from prison.

19. On June 8, 2005, a Drug Enforcement Administrative Subpoena was sent to MSN Hotmail reference email address vjherrera@hotmail.com. As noted above, this information was obtained by Shari HERRERA on June 8, 2005, during an interview in Boise, Idaho by law enforcement. On June 8, 2005, Hotmail provided the following information reference the account. The account was established on July 8, 2002, in Guatemala by Shari HERRERA at the following IP address 65.54.228.128. As noted by MSN, the data provided to them by the user is not authenticated and may not be true.

20. The account activity logins show that on September 20, 2002 the account was used in Guadalajara, Mexico. The next login was made in Mexico City, Mexico on July 30, 2003. The following login occurred in Boise, Idaho on April 5, 2005. Between April 5, 2005 and June 8, 2005, the account was used (logged in) in Boise, Idaho and on one occasion in Vancouver, Washington.

21. On June 9, 2005, a Drug Enforcement Administrative Subpoena was sent to Yahoo! Inc. reference email canchelinda15@yahoo.com. As noted above, this information was obtained by

11

Shari HERRERA on June 8, 2005, during an interview in Boise, Idaho by law enforcement. Shari HERRERA noted that this email address was being used by her husband Otto HERRERA. On June 9, 2005, Yahoo provided the following information reference the account. The account was established on June 4, 2005, in Mexico at the following IP address 148.233.159.25, by Ms Rebecca Clinton in Argentina. As noted by Yahoo, the data provided to them by the user is not authenticated and may not be true. The first login occurred on June 5, 2005 in Mexico City, Mexico as noted by the IP address. The logins show that the account was being used (logged in) in Mexico City, Mexico and Boise, Idaho. Yahoo found 254 logins and showed that the account was being shared between users in Boise, Idaho and Mexico City, Mexico. The reason for this is because the logins occurred minutes apart which is not possible due to the distance and the time it would take to travel between Mexico and Idaho.

**H. Conclusion**

22.   Based upon the information above, I have probable cause to believe that on the computer systems owned, maintained, and/or operated by Hotmail, headquartered at 1065 La Avenida, Building 4, Mountain View, California, there exists evidence which would lead to the location of Otto Herrera, a person to be arrested. By this affidavit and application, I request that the Court issue a search warrant directed to Hotmail allowing agents to seize the e-mail and other information stored on the Hotmail servers for the computer accounts and files specified in Attachment A. The warrant will be faxed to Hotmail personnel who will be directed to produce those accounts and files.

## I. Request for Sealing

25. Since this investigation is continuing, disclosure of the search warrant, this affidavit, and/or this application and the attachments thereto will jeopardize the progress of the investigation. Accordingly, I request that the Court issue an order that the search warrant, this affidavit in support of application for search warrant, the application for search warrant, and all attachments thereto be filed under seal until further order of this Court. In addition, because notification of the existence of this order will seriously jeopardize an investigation, I request that the Court issue an order pursuant to 18 U.S.C. Section 2705(b) ordering Hotmail not to notify any person of the existence of the application, affidavit, search warrant and attachment, until directed to do so by the Court

X _William S. [signature]_
William Brown
Special Agent
Drug Enforcement Administration

Sworn to and subscribed before me this _____ day of June, 2005.

JUN 1 6 2005

_[signature]_
Honorable John M. Facciola
District Court Magistrate Judge

13